UNITED STATES OF AMERICA
EASTERN DISTRICT OF MICHIGAN -- SOUTHERN DIVISION

MATAN COHEN,

    Plaintiff,                              DEMAND FOR JURY TRIAL

-vs-                                          Case No.
                                             Hon.

MANGROVE MOTORSPORTS LLC, and
CHARLES N. BUGBEE, *jointly and severally,*

    Defendants.

## COMPLAINT AND JURY DEMAND

## JURISDICTION

1. This court has diversity jurisdiction to hear this case pursuant to 28 U.S.C. § 1332 as:

    a. the amount in controversy exceeds $75,000, and

    b. the parties' citizenship is completely diverse.

        i. The Plaintiff resides in the State of Missouri.

        ii. The first-named Defendant is a Limited Liability Corporation located in Michigan and, upon information and belief, none of its members are citizens of the State of Missouri.

1

      iii.    The second named-Defendant is, upon information and belief, an individual who is a citizen of the State of Florida and not a citizen of the State of Missouri.

2.    The Plaintiff suffered actual, concrete damages as he purchased a car for $199,000.00 from the Defendants which turned out to be stolen and was seized by the police five months after he purchased it.

## PARTIES

3.    The Plaintiff to this lawsuit is Matan Cohen who resides in St. Louis, Missouri.

4.    The Defendants to this lawsuit are as follows:

    a.    Mangrove Motorsports LLC ("MMLLC") which is a corporation doing business in Michigan as an automobile dealer and which by statute and condition of licensing, may be served through its irrevocable resident agent, the Bureau of Regulatory Services, Business Licensing and Regulation Division, State of Michigan, Cashier's Unit, 7064 Crowner Dr., Dimondale, MI 48821.

    b.    Charles N. Bugbee, an individual who is a citizen of the State of Florida and who lives at 28009 Gulf Blvd., Big Pine Key, FL 33043.

5. At all relevant times, MMLLC is a corporation operated by Charles N. Bugbee and at all times relevant, Charles N. Bugbee and MMLLC were acting in concert and are jointly and severally liable for misrepresentation.

## VENUE

6. The first named Defendant maintains its registered office at 13854 Lakeside Circle, Sterling Heights, Michigan 48313.

7. Venue is proper in the United States District Court for the Eastern District of Michigan.

## GENERAL ALLEGATIONS

8. On August 20, 2022, Rory David Lamberton purchased a certain 2015 Lamborghini Huracan, VIN ZHWUC1ZFXFLA03026 ("the vehicle") and it was titled in his name in the State of Colorado ("Colorado title") on January 11, 2023.

9. The vehicle and the Colorado title were stolen from Rory David Lamberton.

10. At some point prior to July 22, 2023, Defendants took possession of the vehicle and the Colorado title but did not obtain a valid signature from the titled owner in order to effectively transfer title or take ownership.

11. The small amount the Defendants paid for the vehicle, upon information and belief, was so far below fair market value that they knew or should have known that the vehicle and the title were stolen.

12. The fact that the registered title holder of the vehicle was not present when the Defendants took possession of the vehicle and the Colorado title should have informed the Defendants that the vehicle and the title were stolen.

13. At no time prior to taking possession of the vehicle and title did the Defendants ever contact the registered titleholder to confirm whether he wanted to convey possession or transfer title to the Defendants.

14. On or about July 22, 2023, Defendant Charles N. Bugbee posted a photo of the vehicle bearing Defendant MMLLC's Michigan dealer plate.

15. Under the laws of the State of Michigan, authorized use of a dealer plate includes:

   a. Dealer-owned vehicles being driven to and from repair facilities, storage lots, and other locations where vehicles are being held prior to sale;

   b. Dealer-owned vehicles being moved to locations where they may be bought or sold;

   c. Dealer-owned vehicles driven by a prospective customer of a dealership for testing of demonstration purposes for up to 72 hours;

    d.    A person who has purchased a vehicle from a dealership may operate the vehicle with a dealer plate for up to 72 hours after taking delivery of the vehicle; and

    e.    Dealer-owned vehicles driven by employees, servants, or agents of the dealership to transport monies and documents (related to the sale of vehicles) to banks and Secretary of States offices.

16. Under the laws of the State of Michigan, unauthorized use of a dealer plate includes:

    a.    Vehicles not owned by the dealership, except a vehicle sold to a customer not more than 72 hours after taking delivery;

    b.    Vehicles used as service vehicles or wreckers. Service vehicles include courtesy cars, loaners, daily rental, lease, vehicles used for obtaining or delivering parts, and vehicles used to provide roadside service or tow disabled vehicles. (Service vehicles must be titled and registered to the dealership);

    c.    Vehicles owned by the dealership when operated by a person who is not the dealer, the dealer's employee or agent, or a prospective purchaser;

    d.    Vehicles titled as scrap or salvage, unless the salvage-titled vehicle has been inspected and recertified by a specially trained police officer.

17. When Defendants placed the MMLLC dealer plate on the vehicle and posted it on social media, this was a representation that the vehicle was owned by MMLLC when it was not.

18. When Defendants placed the dealer plate on the vehicle and posted it on social media, it was an unauthorized use of a dealer plate and an intentional misrepresentation.

19. Prior to August 11, 2023, the Defendants advertised the vehicle for sale on Defendant MMLLC's social media page.

20. In Michigan, MCL § 257.235(1) requires a dealer to have in immediate possession a properly assigned certificate of title, with odometer mileage disclosure information properly completed, for every vehicle acquired by the dealer.

21. In Michigan, a vehicle may not be sold, displayed, or offered for sale unless the dealership has a properly assigned title or other ownership document in its immediate possession. This includes vehicles purchased from other states whose laws permit financial institutions to hold the title until the secured interest (lien) is paid and "title attached" sales.

22. At no time did the Defendants ever have a properly assigned title.

23. At no time did the Defendants ever obtain legal transfer of title from the registered owner.

24. At no time, upon information and belief, did the Defendants include the vehicle in their inventory as required to legally insure the vehicle under the dealer insurance policy.

25. At no time, upon information and belief, did the Defendants add the vehicle to their police book.

26. The Defendants knew or should have known that the vehicle was stolen.

27. On or about August 11, 2023, Plaintiff purchased the vehicle from MMLLC and its agent, Charles N. Budgbee (referred to hereafter collectively as "Defendants.")

28. Plaintiff paid Defendants $199,000.00 for the vehicle.

29. The purchase agreement and the Michigan Application for Title provided by the Defendants constituted an enforceable contract which contained express and implied warranties of title.

30. Defendants breached the contract with Plaintiff.

31. The Defendant MMLLC breached the warranty of title.

32. Before consummating the purchase of the vehicle, Defendants made the following material representations ("material representations") which also constituted express warranties, were false, and related to the vehicle:

    a. MMLLC was the owner of the vehicle; and

    b. MMLLC could convey marketable title.

33. Before executing the purchase agreement, MMLLC made the following specific representations which constituted express warranties:

    a. MMLLC was the owner of the vehicle; and

    b. MMLLC could convey marketable title.

34. The vehicle did not meet MMLLC's specific representations – in fact, the Defendants sold the Plaintiff a stolen vehicle.

35. The vehicle constitutes a "good" under article 2 of the UCC, M.C.L. § 440.2101 *et seq*.

36. On January 4, 2024, the vehicle was seized by the St. Louis County Police Department.

37. Plaintiff suffered damages as a result of the acts and omissions set forth herein.

## COUNT I -- Breach of Contract

38. Plaintiff incorporates the preceding allegations by reference.

39. MMLLC's tender of the performance did not conform as a result of the fact that the vehicle was stolen.

40. The failure of MMLLC to deliver conforming goods constitutes a material breach of contract.

41. Plaintiff suffered damages as a result of this breach of contract in the amount of $199,000.00.

## COUNT II -- Breach of Warranty of Title

42. Plaintiff incorporates the preceding allegations by reference.

43. MMLLC has breached its express warranty of title.

44. Plaintiff suffered damages as a result of these breaches of warranty.

45. Plaintiff suffered damages as a result of this breach of warranty of title in the amount of $199,000.00.

## COUNT III — Motor Vehicle Code Violations

46. Plaintiff incorporates the preceding allegations by reference.

47. MMLLC's failure to effectively transfer title constituted a violation of M.C.L. §257.235.

48. Plaintiff may void the contract of sale as a result MMLLC's violation of the Motor Vehicle Code under M.C.L. §257.251.

## **COUNT IV -- Violation of Michigan Consumer Protection Act**

49. Plaintiff incorporates the preceding allegations by reference.

50. MMLLC is engaged in trade or commerce as that terms is defined in M.C.L. § 445.902.

51. MMLLC has engaged in one or more of deceptive or unfair practices prohibited by the Michigan Consumer Protection Act, M.C.L.§ 445.903, including but not limited to the following:

    a. Causing a probability of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services.

    b. Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has sponsorship, approval, status, affiliation, or connection that he or she does not have.

    c. Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.

    d. Causing a probability of confusion or of misunderstanding as to the legal rights, obligations, or remedies of a party to a transaction.

    e.    Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer.

    f.    Entering into a consumer transaction in which the consumer waives or purports to waive a right, benefit, or immunity provided by law, unless the waiver is clearly stated and the consumer has specifically consented to it.

    g.    Failing, in a consumer transaction that is rescinded, canceled, or otherwise terminated in accordance with the terms of an agreement, advertisement, representation, or provision of law, to promptly restore to the person or persons entitled to it a deposit, down payment, or other payment.

    h.    [F]ailure of the other party to the transaction to provide the promised benefits.

    i.    Making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is.

52.    Plaintiff suffered damages in the amount of $199,000 as a result of these violations of the Michigan Consumer Protection Act.

## COUNT V -- Misrepresentation

53. Plaintiff incorporates the preceding allegations by reference.

54. The material representations were intended to induce the reliance of Plaintiff.

55. The material representations did induce the reasonable reliance of Plaintiff.

56. MMLLC and BUGBEE made the material representations with actual knowledge of their falsity.

57. MMLLC made the material representations with reckless disregard to their truth or falsity.

58. MMLLC made the material representations even though it should have known that they were false.

59. These actions constitute a misrepresentation upon Plaintiff by Defendants.

60. Plaintiff suffered damages as a result of this misrepresentation.

61. Plaintiff suffered damages in the amount of $199,000 as a result of these misrepresentations.

## JURY DEMAND

62. Plaintiff requests a jury trial in this case.

## **REQUEST FOR RELIEF**

Plaintiff requests that this Honorable Court assume jurisdiction over this case and award actual damages in the amount of $199,000.00, interest, statutory damages, costs, and attorney fees.

                                                  Respectfully Submitted,

                                                  ADAM G. TAUB & ASSOCIATES
                                                  CONSUMER LAW GROUP, PLC

                                      By:    /s/ Adam G. Taub
                                                    Adam G. Taub (P48703)
                                                    Attorney for Matan Cohen
                                                    17200 West 10 Mile Rd. Suite 200
                                                    Southfield, MI 48075
                                                    Phone:  (248) 746-3790
                                                    Email:  adamgtaub@clgplc.net

Dated:  April 10, 2024